IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STUDENT PAINTERS-MICHIGAN LLC, | ) |
| Plaintiff, | ) |
| v. | ) 2:22-cv-00855 |
| STUDENT PAINTERS INC., | ) |
| Defendant. | ) |

## OPINION

Plaintiff Student Painters-Michigan ("SPM") has filed a Motion for Default Judgment and Permanent Injunctive Relief (ECF No. 17) against Defendant Student Painters Inc. For the following reasons, the motion will be granted.

**I. BACKGROUND**

SPM commenced this action with the filing of a Complaint and alleges that Defendant infringed on SPM's trademark by copying SPM's trademark, domain name, and business model. Federal question jurisdiction follows SPM's Lanham Act claims, 28 U.S.C. §§ 1331, 1338, and supplemental jurisdiction is asserted over the related state law claims. 28 U.S.C. § 1367(a). SPM alleges four distinct claims: (1) trademark infringement, unfair competition and false designation of origin or sponsorship in violation of the Lanham Act, 15 U.S.C. §§ 1117, 1125(a) (Count I); (2) common law unfair competition (Count II); (3) common law trademark infringement (Count III); and (4) cancellation of trademark registration (Count IV).

SPM served Defendant on June 16, 2022 (ECF No. 12) and Defendant has not responded to the Complaint nor otherwise appeared to defend against SPM's claims. As a result, SPM requested entry of default (ECF No. 13), and the Clerk entered default on July 16, 2022. (ECF No. 14). SPM then moved for

default judgment and a permanent injunction. (ECF No. 17). The Court scheduled a video hearing on the motion (ECF No. 19) and the Clerk mailed the scheduling Order to Defendant at the physical address identified in the summons via certified mail. SPM was ordered to also serve a copy of the Order and the link to access the Zoom meeting room on defendant. *Id.* Defendant did not appear at the hearing or otherwise respond to SPM's the pending Motion. (ECF No. 23).

On September 12, 2022, the court held the hearing as scheduled. The evidence submitted included the testimony of Stephen Acorn, CEO of SPM, as well as exhibits attached to Plaintiff's Brief in Support of the motion (ECF No 20-1 through 20-6), and defendant's Pennsylvania business entity registration and Articles of Incorporation (ECF No. 22 at 11). Mr. Acorn's testimony was consistent with his declaration. (ECF No. 20-2). We further note that due to defendant's default, as explained *infra*, the well-pleaded facts in the Complaint are taken as true.

The allegations in the Complaint are as follows. Since 1999, SPM has provided high-quality exterior painting services for homes and other structures under the name STUDENT PAINTERS. (See Compl. at ¶¶ 11-12; Exh. B, Acorn Decl. at ¶ 2). From the start, SPM's mission was to also provide local young adults with a unique learning experience. (Compl. at ¶ 13.) Specifically, each summer SPM gives college students an opportunity to develop into entrepreneurs by training them how to run a business from start to finish. (*Id.*; Exh. B at ¶ 3.) Students chosen for the program are SPM employees and are taught the managerial and leadership skills needed to become business owners. (Compl. at ¶ 13; Exh. B at ¶ 4.) Specifically, students are hired as "Branch Managers" for designated territories. During the internships the students write business and marketing plans, receive sales, management and business training, hire and manage a crew of employees, and solicit customers and prepare project estimates. (Compl. at ¶ 13; Exh. B at ¶ 4.)

For over 20 years, SPM has used the STUDENT PAINTERS mark in connection with exterior painting services and training students on fundamental business management and leadership skills in multiple states. (Exh. B at ¶ 5.) Since its inception, SPM has serviced thousands of customers. (*Id.* at ¶

6). Over the last 15 years, SPM trained over 10,000 students, including almost 100 students in Pennsylvania over the last four years. *Id*.

SPM's contribution to the students in the communities it serves has been recognized in local print and television media across multiple states, including, but not limited to, Georgia, Indiana, Massachusetts, Michigan, Ohio, Pennsylvania, and South Carolina. (*See* Compl. at ¶ 15; Exh. B at ¶ 7 (Ex. 1)).

From at least 2012 to the present, SPM students have received proclamations from mayors across the country lauding the entrepreneurial skills they developed in their work with SPM, including mayors in Georgia, Massachusetts, Michigan, Ohio and South Carolina. (*See* Compl. at ¶ 16; Exh. B at ¶ 8 (Ex. 2)). SPM has received hundreds of testimonials from satisfied customers, as well as students who benefited from the program and parents. (*See* Exh. B at ¶ 9 (Ex. 3)). In 2017 the Governor of the state of Michigan paid "Special Tribute" to SPM.  (*See* Compl. at ¶ 17; Exh. B at ¶ 10 (Ex. 4).)

Mayors in at least fifteen cities in seven states have designated a "Student Painters Day." (Compl. at ¶ 18; Exh. B at ¶ 8 (Ex. 2)). In Boston, for example, the Mayor designated May 14, 2015 to be "Boston Student Painters Day" and proclaimed that SPM "fosters personal and professional growth throughout Boston's extensive student community, and promotes a spirit of ingenuity and innovation …." (See Compl. at ¶ 18; Exh. B at ¶ 8 (Ex. 2)). SPM has been similarly honored in Georgia, Kentucky, Ohio, Michigan, North Carolina, and South Carolina. *Id.*

In addition to investing in its students, SPM has invested significant time and money, more than $125,000 annually from 2017 through 2021, in marketing and advertising, including through its website (https://www.studentpainters.biz/), social media (Facebook and LinkedIn), direct mail, brochures, vehicle signs, lawn signs, and merchandise. (See Compl. at ¶ 20; Exh. B at ¶ 11 (Ex. 5)).  SPM's STUDENT PAINTERS signage is, in fact, ubiquitous in Pennsylvania as SPM currently has four Branch Managers servicing and advertising in dozens of cities. (Exh. B at ¶ 12.)

Due to its efforts and the quality services its students provide, SPM has for at least the last 5 years annually earned millions in sales. (Compl. at ¶ 20; Exh. B at ¶ 13.) In 2016, Inc.com named SPM one of the Inc.5000 Fastest-Growing Private Companies in America. (See Compl. at ¶ 19; Exh. B at ¶ 14 (Ex. 6).)

As a result of SPM's extensive promotion, marketing and advertising efforts, substantial community recognition, and the quality of SPM's painting services, SPM has built up substantial goodwill and consumers have come to associate and identify STUDENT PAINTERS exclusively with SPM. (Compl. at ¶ 21; Exh. B at ¶ 15.)

Defendant began using the trademark STUDENT PAINTERS in or about March 2021 to offer exterior painting and pressure washing services in multiple states, including at least Pennsylvania, Massachusetts, and Connecticut. (Compl. at ¶ 25; Exh. C, printouts from Defendant's website.) In addition to copying SPM's trademark, Defendant copied the bulk of every aspect of SPM's business. For example, Defendant's website domain name - www.studentpainters.org - is virtually identical, the only difference being that SPM's domain ends in .biz. (Compl. at ¶ 26.) Defendant, like SPM, advertises via Facebook and LinkedIn. Defendant modeled its business structure after SPM by allowing students to take managerial and leadership roles, stating "We only employ students and are completely student owned." (Exh. C.) Moreover, like SPM, the students who lead Defendant's various territories are called "Branch Managers." *Id.*

Although aware of SPM and its prior use of the STUDENT PAINTERS mark for identical services, on May 5, 2021 Defendant applied in the United States Patent and Trademark Office ("USPTO") to register STUDENT PAINTERS for "Painting, exterior; Pressure washing services" in Class 37, claiming to have first used the mark in commerce on March 1, 2021. (*See* Compl. at ¶ 27; Exhibit D, Application.) On February 15, 2022, the application matured to a Supplemental Registration, U.S. Registration Number 6,648,690 ("the '690 Registration"). (*See* Exhibit E, Registration.) In the application, Defendant falsely declared it was unaware of other persons who have the right to use the mark in commerce. (See Exh. D.)

In August 2021, SPM received a complaint from a customer about a job in Pennsylvania, which SPM later confirmed it had not performed. SPM now realizes that this was likely a complaint intended for Defendant that was misdirected to SPM. (Exh. B at 17).

Soon thereafter, in March 2022, SPM became aware of Defendant and its unauthorized use and registration of the STUDENT PAINTERS mark upon receipt of a letter from Defendant's President, Leonard Fechter. (Compl. at ¶ 29; Exh. B at ¶ 16). Mr. Fechter attempted to assert the trademark registration to demand that SPM cease use of the STUDENT PAINTERS mark. (Compl. at ¶ 29; Exh. B at ¶ 16.) SPM responded noting that it has used the SPM Mark in commerce for over 20 years, long before Defendant began using the mark without SPM's permission. (Compl. at ¶ 29; Exh. B at ¶ 16.) SPM further demanded that Defendant immediately cease its unauthorized use of the STUDENT PAINTERS mark. (Compl. at ¶ 29; Exh. B at ¶ 16.) Mr. Fechter refused to cease the infringement unless SPM paid $150,000. (Exh. B at ¶ 16.) SPM refused and, to date, Defendant continues to use the infringing mark.

**II. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55 provides for the entry of default when a defendant has "failed to plead or otherwise defend" an action. Fed. R. Civ. P. 55(a). After a default has been entered by the Clerk of Court pursuant to Rule 55(a), a plaintiff may move for a default judgment. Fed. R. Civ. P. 55(b)(2). "Upon entry of default against a defendant, the 'well-pleaded' facts alleged in the complaint (except those relating to damages) must be taken as true*.*" *Gen. Nutrition Inv. Co. v. Ingrounds Pro, Inc.*, No. 2:20-CV-00022, 2020 WL 1685118, at *1 (W.D. Pa. Apr. 7, 2020) (quoting *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 439 (E.D. Pa. 2006) and citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

After the district court satisfies itself that it "has both subject matter jurisdiction over the action and personal jurisdiction over the defendant against whom the default judgment is sought," *Mercedes-Benz Fin. Servs. USA LLC v. Synergistiks, Inc.,* No. 3:18-cv-184, 2019 WL 481753, at *2 (W.D. Pa. Feb.

7, 2019), the court must then determine whether the well-pled facts in the complaint state a cause of action against the defendant. *Id.* Finally, the Court must consider three factors to determine whether default judgment should be granted: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa,* 210 F.3d 154, 164 (3d Cir. 2000).

### III. DISCUSSION

#### A. Jurisdiction

"In considering a motion for default judgment, a district court first must be satisfied that it 'has both subject matter jurisdiction over the action and personal jurisdiction over the defendant against whom the default judgment is sought.'" *Gen. Nutrition Inv. Co. v. Laurel Season, Inc.,* No. CV 20-691, 2020 WL 5077465, at *1 (W.D. Pa. Aug. 26, 2020) (quoting *Mercedes-Benz Fin. Servs. USA LLC v. Synergistiks, Inc.*, 2019 WL 481753, at *2). The Court has federal question subject-matter jurisdiction based on SPM's federal Lanham Act claims, 28 U.S.C. § 1331, and supplemental jurisdiction over SPM's state law claims because these claims arise out of the same controversy — Defendant's use of SPM's trademark. *See,* 28 U.S.C. § 1367(a); *see also Ingrounds*, 2020 WL 1685118, at *3. The Court also has jurisdiction under the Lanham Act over SPM's request for cancellation of Defendant's trademark registration: "In any action involving a registered mark the court may … order the cancelation of registrations, in whole or in part …." 15 U.S.C. § 1119.

The court must ensure that an exercise of personal jurisdiction over a defaulting defendant is proper. *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017). According to the Supreme Court, the "paradigm" forums for the exercise of general jurisdiction "are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Here, we have general jurisdiction over Defendant because it is incorporated in Pennsylvania. (Exc. F, SPI's business registration).

Thus, the Court finds that it may properly exercise subject-matter jurisdiction and personal jurisdiction over Defendant.

**B. Sufficiency of SPM's Trademark Infringement and Unfair Competition Claims**

To establish claims for trademark infringement and unfair competition, SPM must show that: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services." *Laurel Season*, at *4 (citing *Freedom Card, Inc. v. JP Morgan Chase & Co.,* 432 F.2d 463, 470 (3d Cir. 2005)).

SPM's trademark is not registered. "A party establishes ownership of an unregistered mark by being the first to adopt the mark and continuously use it in commerce; a party does not establish ownership by being the first to register the mark." *Xtreme Caged Combat v. ECC Fitness*, 2013 WL 6022135, at *8 (E.D. Pa. Nov. 14, 2013) (citations omitted). The Third Circuit has explained:

> With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce. *Tally-Ho, Inc. v. Coast Community College District,* 889 F.2d 1018, 1022-23 (11th Cir. 1989) ("actual and continuous use is required to acquire and retain a protectible interest in a mark," while the "first to use a mark on a product ... in a ... market acquires rights in the mark in that market"); *Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.,* 811 F.2d 1470, 1473 (Fed. Cir. 1987) ("trademark rights in the United States are acquired by.... adoption and use, not by registration"); *Kohler Mfg. v. Beeshore,* 59 F. 572, 576 (3d Cir. 1893) (there must be an intention "to adopt [the mark] as a trademark"); *Caesar's World, Inc. v. Caesar's Palace*, 490 F. Supp. 818, 822 (D. N.J. 1980) ("Common law rights are acquired in a ... mark by adopting and using the mark ...").

*Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 292 (3d Cir.), *cert. denied,* 502 U.S. 939 (1991); *see also Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163, 170 (3d Cir. 2017) ("The first use test is generally proper for unregistered trademarks, taking account of the well-established common law principle of "first-in-time, first-in-right" that rewards actual and continuous use in commerce as between market competitors.").

"Trademark ownership inures to the legal entity who is in fact using the mark as a symbol of origin." 2 McCarthy on Trademarks and Unfair Competition § 16:35 (5th ed. 2017). "Only the owner of a trademark may apply to register that mark with the Patent and Trademark Office." *Id*. "If the entity filing

7

the application was not the owner of the mark as of the filing date, the application is void ab initio. This is a statutory requirement and cannot be waived." *Id*. at § 19:53.

      Here, SPM has shown, through testimony of Mr. Acorn and exhibits as cited *supra*, prior ownership, in that it continuously used the mark in connection with painting services in multiple states for over 20 years, including 11 years in Pennsylvania; this continuous use began long before Defendant's alleged first use in March 2021. (See Exh. B at ¶¶ 5-11 and exhibits attached thereto).

      If the mark is not federally registered, then whether it is valid depends on whether it possesses secondary meaning. SPM has also shown that although its mark may not have been federally registered, it is valid given its secondary meaning. Factors a court may consider in determining whether the mark has achieved secondary meaning include: (1) extent of sales and advertising that lead to associations by consumers; (2) length of use; (3) exclusivity of use; (4) whether others copy the mark; (5) customer surveys; (6) customer testimony; (7) the mark's use within trade journals; (8) the size of the seller; (9) the amount of sales; (10) the volume of customers; and (11) actual confusion. *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000). Here, SPM has shown continual use of the STUDENT PAINTERS mark in multiple states, that the mark was used in connection with its exterior painting services and business model, that it trained thousands of students and serviced thousands of customers, was recognized in testimonials from all who were involved in (and their parents) or recipients of its services, received honors and recognitions from at least 2012, has invested substantial sums in marketing and advertising through its website, social media, and other platforms and forms, and that it has earned millions of dollars in annual revenues since 2017. Indeed, SPM has received a complaint prior to learning of Defendant's use of the mark, thus supporting actual confusion. In sum, we find that plaintiff has met its burden of showing secondary meaning in its mark.

      In assessing whether a likelihood of confusion exists, the Court applies the following factors: (1) the similarity between the plaintiff's mark and the challenged mark; (2) the plaintiff's mark's strength; (3) the price of the goods allegedly infringing and the care expected of consumers in purchasing those goods;

(4) the period of time the allegedly infringing mark has been used without evidence of actual confusion; (5) the intent of the defendant; (6) evidence of actual confusion; (7) whether the allegedly infringing goods are marketed through the same channels or advertised through the same media; (8) the overlap of the target demographics; (9) the relationship between the goods, as viewed by consumers; and (10) other factors suggesting that consumers might expect the plaintiff to have made both goods. *Cornette v. Graver*, No. 3:19-cv-219, 2020 WL 1643370, at *8 (W.D. Pa. Apr. 2, 2020); *Interpace Corp v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 19830; *see Facenda*, 542 F.3d at 1019. None of these factors is alone dispositive, and the Court weighs and balances each factor against the others. *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 280 (3d Cir. 2001). The first factor, the similarity of the marks, is one of the most critical elements of the Court's analysis. *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472–73 (3d Cir. 1994). Marks are similar when they create the same overall impression when viewed separately and are confusingly similar if ordinary consumers would likely conclude that the two products "share a common source, affiliation, connection, or sponsorship." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 207 (3d Cir. 2000).

On balance, we find that there is likelihood of confusion as to the STUDENT PAINTERS mark. The parties offer the same, identical services, under the same name, are competitors in the same market, and there is a strong secondary meaning to the mark. Consumers can easily have confusion given the overwhelming similarity in the business structure, and in fact, SPM received a complaint which was from a customer of Defendant's.

The Court therefore finds that SPM adequately states claims against Defendant for trademark infringement and unfair competition under both the Lanham Act and Pennsylvania law.

### C. Default Judgment

"Factors in determining whether default judgment should be granted, the Court must also consider: '(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable

9

defense, and (3) whether defendant's delay is due to culpable conduct.'" *Ingrounds*, 2020 WL 1685118, *4 (quoting *Chamberlain v. Giampapa*, 210 F.3d at 164). "When a defendant is in default and has not opposed the motion for default judgment, however, trial courts in this circuit give somewhat less deference to *Chamberlain*." *Ingrounds*, 2020 WL 1685118, at *4 (quoting *Broad. Music, Inc. v. George Moore Enterprises, Inc.*, 184 F. Supp. 3d 166, 170 (W.D. Pa. 2016)).

As in *Ingrounds*, SPM will suffer prejudice if default judgment is denied because Defendant's will continue to confuse customers and diminish the value of SPM's trademark. Nor does Defendant appear to have a litigable defense based on its failure to appear in this case and assert any defense to the claims against it. Finally, Defendant's failure to participate in this action creates a presumption of culpability. *Id.* (citing *Spring Valley Produce, Inc. v. Stea Bros. Inc.*, No. 15-193, 2015 WL 2365573, at *3 (E.D. Pa. May 18, 2015)). Thus, SPM's proposed default judgment is warranted and the Court will grant the Motion for Default Judgment.

### D.  Injunctive Relief

SPM requests the entry of a permanent injunction that will enjoin Defendant from advertising, marketing, selling or offering to sell products or services using STUDENT PAINTERS trademark or any trademark confusingly similar thereto. "In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Laurel Season*, 2020 WL 5077465, at *5 (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)). This analysis is aided by Defendant's default, which requires the Court to treat the allegations as true. *Broad. Music*, 184 F. Supp. 3d at 170.

As discussed regarding the first factor, SPM's Complaint sets forth valid trademark infringement and unfair competition claims against Defendant, and Defendant has not asserted a defense to the claims. SPM has therefore shown actual success on the merits.

SPM also shows that it will be irreparably injured by the denial of injunctive relief. "'The essence of the irreparable harm caused by trademark infringement is the aggrieved party's loss of control over its business reputation and goodwill.'" *Ingrounds*, at *5 (quoting *AAMCO Transmissions, Inc. v. Dunlop*, No. 11-4009, 2015 WL 4476423, at *3 (E.D. Pa. July 22, 2015)). SPM indicates that it will suffer significant harm to its reputation from diversion of customers, loss of students who are central to SPM's core business structure, dilution of SPM's brand and trademark, loss of control over the reputation it built over more than 20 years, and diminishment of SPM's reputation and goodwill.

The third factor examines whether injunctive relief will cause greater harm to the defendant. Here, a permanent injunction will not cause greater harm to Defendant because it would serve to prevent it from engaging in conduct to which it has no legal right. *AAMCO Transmissions,* 2015 WL 4476423, at *2.

Finally, as to the fourth factor, an injunction is in the public interest because to protect SPM's trademarks would avoid consumer confusion, and prevent to enforce the trademark laws is in the public interest. *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 197 (3d Cir. 1990).  In sum, SPM has established that it is entitled to permanent injunctive relief in this case.

## IV. CONCLUSION

For the foregoing reasons, SPM's Motion for Default Judgment and Permanent Injunctive Relief, (ECF No. 17) will be granted.

 Date:  September 15, 2022

<u>s/Robert J. Colville</u><br>
Robert J. Colville<br>
United States District Judge

cc/ecf:  All counsel of record
         Defendant Student Painters Inc. c/o Chanille B. Carswell, Esquire

Student Painters, Inc.
42 St. Clair Drive
Pittsburgh, PA 15228
*Via U.S. certified mail*